Gary Calvin LILLY, Plaintiff,

v.

CITY OF BECKLEY, WEST VIRGINIA, et al., Defendants.

Civ. A. No. 80–5188.

United States District Court, S.D. West Virginia.

March 1, 1985.

**138**

Kevin B. Burgess, Hamilton & Mooney, Oak Hill, W.Va., for plaintiff.

James A. Swart and N. Robert Grillo, Higgins & Gorman, Beckley, W.Va., for defendants.

## ORDER

HALLANAN, District Judge.

On the 21st day of August, 1984, came the parties, in person and by their counsel, for the purpose of a trial to the Court of the issues joined in this action in which Plaintiff alleges he was the victim of "reverse discrimination."

After hearing the testimony adduced at said bench trial and reviewing the documentary evidence submitted by the respective parties, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff Gary Calvin Lilly is a white male, a resident of the State of West Virginia, and a citizen of the United States.

2. Plaintiff holds an Associate Degree in Business Administration from Beckley College; an Associate Degree in Criminal Justice from West Virginia State College, and a Bachelor's Degree in Criminal Justice from West Virginia State College.

3. Defendant City of Beckley is a municipality and political subdivision of the State of West Virginia with the ultimate responsibility for the employment, supervision and control of the City's police department.

4. Defendant City of Beckley Police Civil Service Commission is charged by the law of the State of West Virginia and municipal ordinance with certain duties, including testing of applicants for positions on the City police force and certification of qualified applicants to the Mayor for appointment.

5. In January, 1974, Plaintiff was tested and then offered employment by Defendants as a police officer for the City of Beckley but he declined to accept employment at that time.

6. In January, 1976, Plaintiff met all of the necessary requirements for employment as a police officer by Defendants and he again made application for said position.

7. Prior to January, 1976, the Beckley Police Civil Service Commission utilized a hiring-testing procedure which involved a 27-page application, a four-part standard test prepared by Public Personnel Association of Chicago, Illinois, a psychological test, a polygraph examination, a background investigation and a physical examination prior to a final oral interview.

8. Immediately prior to the test administered in January, 1976, the testing procedures were revised. The application was reduced to one page, and the written examination which had previously consisted of objective multiple choice questions were altered to consist of a two-question essay examination.

9. The two questions applicants were required to answer were: "Explain fully the skills and abilities which I have developed which will enable me to serve as a member of the Beckley Police Department and how I am willing to use these toward the best interests of the Deaprtment and the Community (sic)," and, "How do I see myself five years from today as a member of the department (sic)?"

10. Plaintiff passed the written examination for employment but failed the interview portion of the application procedure.

11. There were no objective criterion whatsoever for grading performance on either of these elements of the examination.

12. Following completion of the written testing and interview process, the Defendant Commission certified a list of names to the Mayor who then appointed individuals for positions as police officers.

13. During the course of his interview with a member of the Commission, Plaintiff was essentially told that he would have a much better chance of obtaining employment had he been a member of a minority, and Defendants admit that said comments were true.

14. Prior to the administration of the examination in January, 1976, the Defendants were threatened with a loss of funding from various sources by the West Virginia Human Rights Commission because of the lack of minority recruitment and employment in various departments in the City of Beckley and particularly in the Police Department.

15. Defendants undertook to implement an affirmative action program to remedy the effects of past discrimination in the ranks of the Beckley Police Department and in other departments in the City of Beckley.

16. The evidence in this matter is sufficient to form the basis of a determination that minorities had in fact been discriminated against in hiring practices employed by the City of Beckley and the City Police Department.

17. The City of Beckley and the Beckley Police Civil Service Commission acted in accordance with the directives of the West Virginia Human Rights Commission and particularly Mr. James C. Karantonis with respect to their efforts to develop and implement an affirmative action program to remedy the past effects of discrimination in minority recruitment and hiring.

18. The Commission altered the testing procedure at Mr. Karantonis' instance and apparently followed his directives in the entire matter of testing and certification of qualified applicants to the Mayor for employment.

19. The City of Beckley adopted an affirmative action plan in April, 1976.

20. Said plan provided in part: "The City of Beckley recognizes that preferential hiring on the basis of minority status or sex would be unlawful, even as a means of addressing underutilization of minorities, except as a numerical remedy ordered by the court."

21. The Beckley Police Civil Service Commission was apparently acting in accordance with a voluntary, informal, affirmative action plan at the time the January, 1976, test was administered, although the particulars of said plan were not adduced at the trial of this matter.

22. Defendants concede that Plaintiff was not certified for employment primarily because he was not a member of a minority, and specifically because of his race and sex.

23. Defendants have proved no defense in this matter other than reliance on their "affirmative action" plan.

24. The affirmative action plan relied upon by Defendants failed to set forth any specific goals or timetables with respect to hiring of minority applicants.

25. Plaintiff properly exhausted his administrative remedies in a timely fashion.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter herein by virtue of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and venue is proper pursuant to 42 U.S.C. § 2000e–5(f)(3).

2. Defendant City of Beckley is an employer within the meaning of Title VII and is not immune to liability thereunder.

3. Defendant Beckley Police Civil Service Commission is not, in and of itself an employer within the meaning of Title VII, but by virtue of its relationship with respect to the matters at issue herein is an appropriate party to this action and is a necessary party for purposes of affording complete relief.

4. Title 42 U.S.C. §§ 2000e–2(a)(1) provides:

"(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; ..."

5. By virtue of the facts found by this Court as herein contained, Plaintiff proved a prima facie case of a violation of Title VII by the Defendants by showing that he was protected by the provisions of Title VII, was qualified for the position sought, that he was rejected, that Defendants sought other applicants for the positions available based upon considerations of race and sex which were not in accordance with a bona fide affirmative action plan. *McDonald v. Santa Fe Tras. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); *Bratton v. City of Detroit*, 704 F.2d 878 (6th Cir.1983), *cert. den.*, — U.S. —, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984); *reh. den.* — U.S. —, 104 S.Ct. 1431, 79 L.Ed.2d 754 (1984); *Detroit Police Officers' Ass'n v. Young*, 608 F.2d 671 (6th Cir.1979), *cert. den.*, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981); *Warsocki v. City of Omaha*, 726 F.2d 1358 (8th Cir.1984). *See also, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Setser v. Novack*, 657 F.2d 962 (8th Cir.), *cert. den.*, 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981).

6. Defendants failed to meet their burden of proving that they acted in this matter in accordance with a valid affirmative action plan so as to insulate them from liability on the facts found herein.

7. Defendants failed to show that the purported affirmative action plan upon which they relied was substantially related to the objective of remedying past discrimination in that they failed to establish that its implementation resulted in or was designed to result in the hiring of a sufficient number of minority applicants so that the racial balance of the work force would approximate roughly the balance that would have been achieved absent the past discrimination; and they failed to show that the plan did not result in the hiring of unqualified applicants. *Valentine v. Smith*, 654 F.2d 503 (8th Cir.1981), *cert. den.*, 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981); *Warsocki v. City of Omaha*, 726 F.2d 1358 (8th Cir.1984).

8. Defendants failed to show any goals and timetables for the purported affirmative action plan whatsoever.

9. Defendants failed, therefore, to meet their burden of proving that the plan was reasonably related to its remedial purpose, *Setser v. Novack Inv. Co.*, 657 F.2d 962, (8th Cir.), *cert. den.*, 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981), and that their actions did not unreasonably trammel the rights of non-minorities. *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979).

10. Plaintiff is entitled to affirmative relief pursuant to 42 U.S.C. § 2000e–5(g).

11. Plaintiff is entitled to an award of back pay in the amount of $36,973.09, the amount he would have earned had he not been unlawfully discriminated against, less the interim earnings from his principal occupation.

12. Defendants are not entitled to an offset for earnings from secondary employment inasmuch as Plaintiff proved to the Court's satisfaction that said earnings could have been achieved had he been hired as a police officer.

13. Plaintiff is further entitled to affirmative relief in the form of an offer of employment by the Defendants in this matter.

14. Plaintiff is entitled to recover attorney's fees and court costs incurred in prosecuting this action. 42 U.S.C. §§ 2000e–5(k).

Accordingly, it is hereby ORDERED that Defendant the City of Beckley shall pay to Plaintiff the sum of $36,973.09 within 90 days of the date of this Order to compensate him for back pay lost by reason of Defendants' unlawful discrimination.

It is further ORDERED that Defendants shall offer Plaintiff the next available position as police officer on Defendant's police force.

With respect to the issue of attorney's fees and costs, Plaintiff's counsel shall submit an itemized listing of Plaintiff's claim together with appropriate documentation therewith no later than 30 days of the date of this Order. Said documentation shall include a memorandum of law specifying the appropriate factors in setting the fee award as expressed in *Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir.1978).

Defendant shall file a response thereto if Defendants desire to contest the amount of said petition within 20 days following submission of the same to the Court.

A hearing on the amount of fees and costs to which Plaintiff is entitled shall be held at 1:00 o'clock p.m., on June 13, 1985, in the United States District Courthouse in Beckley, West Virginia. An appropriate Judgment Order in this action shall be entered herewith.